UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEHU HAND,<br><br>Defendant. | CRIMINAL NO. ____ (15CR 10386-)<br><br>VIOLATIONS:<br><br>18 U.S.C. § 371 (Conspiracy)<br><br>15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5 (Securities Fraud)<br><br>18 U.S.C. §§ 1343, 1349, 2 (Wire Fraud)<br><br>18 U.S.C. § 2 (Aiding and Abetting)<br><br>18 U.S.C. § 981 & 28 U.S.C. § 2461 (Criminal Forfeiture) |

## INDICTMENT

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment:

1. Defendant JEHU HAND ("HAND") was an attorney licensed in California.

2. Co-conspirator number 1 ("CC-1"), who is known to the Grand Jury, was a resident of Colorado and was a stock promoter.

3. Co-conspirator number 2 ("CC-2"), who is known to the Grand Jury, was a resident of New Jersey and was a stock promoter.

4. Co-conspirator number 3 ("CC-3"), who is known to the Grand Jury, was a resident of New Jersey and was a stock promoter.

5.      Co-conspirator number 4 ("CC-4"), who is known to the Grand Jury, was a resident of New Jersey and was a stock promoter.

6.      Greenway Technology ("Greenway") was a publicly traded company whose common stock was publicly quoted under the ticker symbol "GWYT" on the OTC Markets, Inc., an inter-dealer electronic quotation and trading system in the over-the-counter securities market. Incorporated in Nevada, Greenway was a shell company as of at least June 2012, without any active business operations or significant assets.

7.      The United States Securities and Exchange Commission ("SEC") is an independent agency of the executive branch of the United States government. The SEC is responsible for enforcing federal securities laws and promulgating rules and regulations in keeping with the same.

8.      Shares, or "securities," of publicly traded companies (known as "issuers") that are not registered with the SEC generally cannot be sold to the public. Such shares are generally considered "restricted." However, Rule 144 of the Rules and Regulations promulgated by the SEC ("Rule 144") permits the sale of restricted securities in certain circumstances. One of the conditions necessary for reliance on Rule 144 is that the issuer is not, and has never been, a "shell company." A shell company is a company with no or nominal operations and no or nominal non-cash assets. Another requirement for relying on Rule 144 is that the seller of the securities is not an "affiliate." An affiliate is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the issuer. A further requirement for reliance on Rule 144 is that restricted stock must be held for at least one year after being acquired from an issuer or an affiliate of an issuer before it can be sold into the market. Shares that are not "restricted" generally are considered "free-trading."

9. As of June 30, 2012, the vast majority of Greenway's common stock—approximately 20,237,466 of 20,265,802 shares—was restricted and therefore unable to be sold in the public marketplace unless (a) the restrictive legends were removed from the stock certificates by the transfer agent, and (b) brokerage firms accepted the shares for deposit and sale. Rule 144 provides an exemption for the removal of restrictive legends. To take advantage of the Rule 144 exemption, however, the transfer agent generally requires a legal opinion letter stating that the conditions of Rule 144 have been met. Moreover, before stock is accepted for deposit and sale by a brokerage firm, the firm will often also require a similar legal opinion letter.

10. A pump-and-dump scheme typically involves the artificial inflation of the stock price of a publicly traded company (the "pump") so that individuals who control a substantial portion of the company's stock can sell shares of that stock at artificially high prices to other investors (the "dump"). Generally, such schemes effect the artificial inflation by, among other things, issuing news releases and promotional materials—often containing false, misleading, or exaggerated information—and by engaging in manipulative trading of the stock to affect its price and generate the appearance of demand for the shares.

## GENERAL ALLEGATIONS

11. Defendant HAND, together with CC-1, CC-2, CC-3, CC-4 and others, both known and unknown to the Grand Jury, engaged in a scheme to manipulate the market for Greenway's securities and to sell unregistered shares of the company's stock to the public in connection with a misleading promotional campaign.

12. HAND and his co-conspirators accomplished their scheme by, among other things, using backdated documents and false legal opinion letters to fraudulently obtain and

deposit millions of shares of Greenway stock. Once this stock had been placed into brokerage accounts controlled by HAND and his co-conspirators, they arranged for Greenway, a shell company with no real operations or assets, to acquire Andalusian Resorts LLC ("Andalusian"), a private company purportedly planning to enter the gay tourism industry. The acquisition provided HAND and his co-conspirators with a story to tell potential investors in order to lure them into buying the conspirators' worthless Greenway stock.

13. After the acquisition was finalized, HAND and his co-conspirators orchestrated a promotion of the newly combined company as a promising business venture on the verge of acquiring hotels that would cater to gay travelers in several major cities. Yet, as the conspirators knew, Greenway lacked the means to purchase any such properties, much less to develop upscale resorts as the press releases and promotions claimed. The false and misleading touting campaign had the desired effect, however, of significantly increasing Greenway's share price and trading volume. As planned, HAND and his co-conspirators took advantage of the artificial increases in Greenway's share price and trading volume to sell millions of shares of unregistered Greenway stock to investors who then suffered significant losses when Greenway's stock price plummeted after the promotions concluded.

### The Purposes and Objectives of the Conspiracy and Scheme to Defraud

14. One purpose of the conspiracy and scheme to defraud was to sell or offer to sell unregistered securities of Greenway in violation of federal securities laws.

15. Another purpose of the conspiracy and scheme to defraud was to engage in a pump-and-dump scheme in connection with the securities of Greenway.

### Manner and Means

16. Defendant HAND and his co-conspirators used the following manner and means, among others, to accomplish the purposes and objectives of the conspiracy, and of the scheme to defraud:

    a. Concealing their control over Greenway by appointing an associate to serve as the company's president and sole director, and then directing that individual to sign board resolutions and other corporate documents;

    b. Using backdated documents to justify the issuance of millions of shares of Greenway stock to entities under their control;

    c. Concealing their control and trading of Greenway's stock by placing the stock in different nominee accounts;

    d. Sending false legal opinion letters to the transfer agent and brokerage firms to facilitate the issuance of their Greenway shares without restrictions and the deposit of these shares in brokerage accounts under their control;

    e. Disseminating, and causing the dissemination of, false and misleading press and promotional materials regarding Greenway in order to artificially inflate the trading volume and share price of Greenway's stock; and

    f. Selling their unregistered Greenway shares to the public at artificially inflated prices, which they had engineered by promoting and paying others to promote Greenway without disclosing their plan to sell the Greenway stock that they controlled during the promotions.

### Acts Taken in Furtherance of the Conspiracy and Scheme to Defraud

17. In furtherance of the conspiracy and the scheme to defraud and to accomplish their objectives, HAND and his co-conspirators committed, and caused to be committed, the following overt acts, among others, in the District of Massachusetts and elsewhere:

18. Beginning in approximately May 2012 and continuing through at least June 2012, HAND and his co-conspirators planned the pump-and-dump of Greenway's stock. HAND engaged in communications with several of his co-conspirators during this time period regarding how to split up Greenway's shares to conceal their control over the vast majority of the company's stock and how to divide the proceeds after they had sold their shares into the market, among other things.

19. On or about July 9, 2012, CC-3 caused a wire transfer of approximately $11,200 to be sent to HAND, via interstate commerce. HAND used some of the funds to pay Greenway's transfer agent, which issued shares to the conspirators, and some to pay OTC Markets Group Inc., which runs the inter-dealer electronic quotation and trading system on which Greenway's stock traded. Specifically, on or about July 13, 2012, HAND wired, via interstate commerce, approximately $5,645.35 to Manhattan Transfer Registrar Company and also wired, via interstate commerce, approximately $4,100 to OTC Markets Group Inc.

20. HAND and his co-conspirators also installed one of their associates as Greenway's president and sole director, and from approximately June 2012 through October 2012, HAND and his co-conspirators controlled Greenway through this individual, without disclosing their control over the company to the public.

21. HAND created and backdated two debt assignments titled "PARTIAL ASSIGNMENT OF SECURED PROMISSORY NOTE" ("the backdated debt assignments"). The backdated debt assignments falsely purported to have been executed on June 20, 2010.

22. Using the backdated debt assignments, on or about July 25, 2012, HAND and his co-conspirators caused the individual whom they had installed as Greenway's president and sole director to pass a resolution issuing a total of seven million shares of Greenway stock to two entities controlled by CC-3, namely Lara Mac, Inc. ("Lara Mac") and Florence Consulting, LLC ("Florence Consulting").

23. Following the board resolution, on or about July 31, 2012, HAND issued a legal opinion letter directing Manhattan Transfer Registrar Company to issue a total of seven million shares of Greenway stock to Lara Mac and Florence Consulting. HAND's letter falsely stated, in sum and substance, that the note being converted into shares had been assigned in 2010, that Lara Mac and Florence Consulting were not affiliates, that Greenway had never been a shell company, and that the shares should be issued "free of any stop transfer or restrictive legend." HAND's letter was false because, as HAND knew, the note in question had not been assigned to Lara Mac or Florence Consulting in 2010; Lara Mac and Florence Consulting were controlled by CC-3, who was an affiliate; Greenway had been a shell company as it had no real operations or assets by June 2012; and any shares issued should have had restrictive legends. After receiving HAND's false legal opinion letter, the transfer agent issued a total of seven million unrestricted shares of Greenway stock to Lara Mac and Florence Consulting.

24. In another letter dated July 31, 2012, HAND provided a false legal opinion for the purpose of having the transfer agent remove a restrictive legend from one million shares of Greenway stock issued to Esthetics World, an entity which HAND controlled. In this letter,

HAND falsely stated, in sum and substance, that Greenway had never been a shell company and that Esthetics World was not an affiliate of Greenway. As HAND himself controlled Esthetics World, it was materially false for him to suggest that the entity was not an affiliate of Greenway. Having received HAND's false legal opinion letter, the transfer agent removed the restrictive legend from the one million shares issued to Esthetics World. Then, on or about August 8, 2012, HAND wrote a similarly false legal opinion letter to Merrimac Corporate Securities, Inc. ("Merrimac"), a brokerage firm, to facilitate the deposit of the one million shares that had been issued to Esthetics World.

25. On or about August 9, 2012, HAND e-mailed CC-2 and another individual several documents, including the two backdated debt assignments. In the subject line of the e-mail, HAND wrote "for deposit of greenway shares" and in the first line of the e-mail, HAND wrote, "Here are documents to assist with deposit." HAND concluded the e-mail, "If you need an opinion, i [sic] will need the certificate number and the broker to whom the opinion should be issued."

26. HAND wrote false opinion letters to brokers. On or about August 17, 2012, HAND provided another letter to Merrimac to assist with the deposit of the shares issued to Esthetics World. In this letter, HAND falsely stated, in sum and substance, that Greenway's public float was 27,726,802 shares, when in fact there were only approximately 15 million unrestricted shares of Greenway stock issued and outstanding at the time.

27. On or about August 22, 2012, HAND provided a false legal opinion letter to a different broker, Spencer Edwards, Inc., to assist CC-1 with the deposit of Greenway shares. In this letter, HAND falsely stated, in sum and substance, that Greenway had never been a shell

company and that CC-1's nominee was not an affiliate of Greenway. After receiving this letter, Spencer Edwards accepted the Greenway shares for deposit and sale.

28. On or about September 24, 2012, HAND provided another false legal opinion letter, this time to assist CC-3 with the deposit of the 3.5 million shares of Greenway that had been issued to Lara Mac. In this letter, HAND falsely stated, in sum and substance, that Lara Mac had received a partial assignment of a note in 2010, that Lara Mac was not an affiliate of Greenway, and that Greenway had never been a shell company. After receiving this letter, Spencer Edwards accepted the Greenway shares for deposit and sale.

29. On or about October 20, 2012, HAND e-mailed Greenway's president, along with CC-2 and a few other individuals, with board resolutions and other documents to finalize the acquisition of Andalusian. HAND directed Greenway's president regarding the documents to be signed. HAND also requested the latest version of the press release that the conspirators planned to issue regarding Greenway's acquisition of Andalusian.

30. On various dates in or about and between November 2012 and December 2012, the CC-3 and CC-4 directly or indirectly paid stock promoters to promote Greenway, and on various dates in or about and between November 2012 and December 2012, these stock promoters sent blast e-mails, which reached thousands of recipients, including at least one recipient in Massachusetts, containing misleading information and touting Greenway's stock to potential investors. For example, one of the blast e-mails sent on November 19, 2012 falsely stated that Greenway was in negotiations to purchase properties in Palm Springs and Las Vegas and that the deals were "expected to close within the fourth calendar quarter of 2012 or the first calendar quarter of 2013."

31. On various dates between approximately August 2012 and January 2013, HAND and his co-conspirators secretly orchestrated the sales of Greenway shares at artificially high prices which they had engineered through manipulative conduct including the issuance of materially misleading press releases and promotional alerts, thereby causing a loss to the investing public of approximately $855,587. For example, between approximately September 7, 2012 and December 18, 2012, Esthetics World, an entity controlled by HAND, sold one million shares of Greenway stock for gross proceeds of approximately $32,811. Moreover, between approximately September 28, 2012 and January 23, 2013, Florence Consulting and Lara Mac, entities controlled by CC-3, sold seven million shares of Greenway stock for gross proceeds of approximately $482,916.

## COUNT ONE
### (Conspiracy to Commit Securities Fraud and Wire Fraud)
### 18 U.S.C. § 371

32.  The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 31 of this Indictment, and further charges that:

33.  From in or about May 2012 and continuing through at least February 2013, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant,

**JEHU HAND,**

together with CC-1, CC-2, CC-3, CC-4 and others known and unknown to the Grand Jury, knowingly and voluntarily conspired to commit offenses against the United States, to wit:

a.  <u>Securities Fraud</u> - knowingly and willfully, by the use of means and instrumentalities of interstate commerce and the mails, and the facilities of a national securities exchange, directly and indirectly, to use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would operate as a fraud and deceit upon one or more investors or potential investors in Greenway, and others, in connection with the purchase and sale of securities of Greenway, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5; and

11

b. <u>Wire Fraud</u> - having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, and attempting to do so, to transmit and cause to be transmitted in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds, to wit: telephone communications, facsimile communications, e-mail communications, and wire transfers in furtherance of the scheme to defraud in connection with the securities of Greenway, in violation of Title 18, United States Code, Section 1343.

34. The purposes, manner and means, and overt acts taken in furtherance of the conspiracy charged herein are set forth in paragraphs 14-31.

All in violation of Title 18, United States Code, Section 371.

**COUNT TWO**
**(Securities Fraud)**
**15 U.S.C. §§ 78j(b), 78ff; 18 U.S.C. § 2**

35. The allegations set forth in paragraphs 1 through 31 of this Indictment are re-alleged and incorporated herein by reference.

36. From in or about May 2012 and continuing through at least February 2013, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**JEHU HAND,**

did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would operate as a fraud and deceit upon one or more investors or potential investors in Greenway, and others, in connection with the purchases and sales of Greenway securities, directly or indirectly, by use of means and instrumentalities of interstate commerce and the mails.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b5, and Title 18, United States Code, Section 2.

## COUNT THREE
### (Wire Fraud)
### 18 U.S.C. § 1343, § 1349 and § 2

37. The allegations set forth in paragraphs 1 through 31 of this Indictment are re-alleged and incorporated herein by reference.

38. On or about the dates set forth below, within the District of Massachusetts and elsewhere, the defendant,

**JEHU HAND,**

having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice, and attempting to do so, transmitted and caused to be transmitted in interstate commerce, wire communications, including writings, signs, signals, pictures, and sounds as set forth below:

| Count | Approximate Date | Description of the Wire |
|---|---|---|
| Three | November 19, 2012 | E-mail touting Greenway's stock from PennyStockAlerts.com, a stock promotion website owned and operated by a California limited liability company, transmitted via interstate wire to at least one recipient in Massachusetts |

All in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

## SECURITIES FRAUD FORFEITURE ALLEGATION
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461)

THE GRAND JURY FURTHER CHARGES:

39. The allegations set forth in paragraphs 1 through 38 of this Indictment are re-alleged and incorporated herein by reference.

40. Upon conviction of the offenses alleged in Counts One and Two of the Indictment,

### JEHU HAND

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

41. If any of the property described in paragraph 40, above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 40.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## WIRE FRAUD FORFEITURE ALLEGATION
## (18 U.S.C. § 981(a)(1)(C), 982(a)(8) and 28 U.S.C. § 2461)

THE GRAND JURY FURTHER CHARGES:

42. The allegations set forth in paragraphs 1 through 41 of this Indictment are re-alleged and incorporated herein by reference.

43. Upon conviction of the offenses alleged in Count Three of the Indictment,

### JEHU HAND

defendant herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 982(a)(8) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses; and /or any real or personal property, used or intended to be used to commit, to facilitate, or to promote the commission of the offenses; and/or any real or personal property, constituting, derived from, or traceable to the gross proceeds, directly or indirectly, as a result of the offenses.

44. If any of the property described in paragraph 43, above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 43.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code 982(a)(8) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
ANDREW J. PALID
ERIC A. FORNI
SPECIAL ASSISTANT U.S. ATTORNEYS

VASSILI THOMADAKIS
ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS; December 10, 2015

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

@ 12:55 PM
12/10/15