# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

<table>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td><b>UNITED STATES OF AMERICA,</b></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><b>Respondent,</b></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td><b>Criminal Action No.</b></td></tr>
<tr><td><b>v.</b></td><td>)</td><td><b>15-10386-FDS</b></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><b>JEHU HAND,</b></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><b>Petitioner.</b></td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
</table>

## MEMORANDUM AND ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

**SAYLOR, C.J.**

This is a motion to vacate, set aside, or correct a sentence by a prisoner in federal custody pursuant to 28 U.S.C. § 2255. On May 21, 2018, a jury found petitioner Jehu Hand guilty of two counts of conspiracy to commit securities fraud and wire fraud in violation of 18 U.S.C. § 371, two counts of securities fraud in violation of 15 U.S.C. § 78(j)(b), and two counts of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced to a 66-month term of incarceration followed by a three-year term of supervised release. A $1,000,000 fine subordinate to restitution was deferred.

Now proceeding *pro se*, petitioner has filed a motion to vacate pursuant to 28 U.S.C. § 2255. He seeks relief on three principal grounds: (1) judicial misconduct, on the ground that the trial judge, Judge William G. Young, was cognitively impaired and the trial transcript was incorrect; (2) ineffective assistance of counsel, as to both his trial and appellate attorneys; and (3) prosecutorial misconduct. For the reasons set forth below, the motion will be denied.

I.    **Background**

In substance, petitioner was convicted of engaging in a "pump-and-dump" scheme—an arrangement to artificially inflate stock prices and sell off shares that proved to be worthless. Petitioner, an attorney, was found to have engaged in two such schemes:  first with respect to a company called Greenway Technology and later with a company called Crown Marketing.

During the Greenway scheme, petitioner backdated debt assignments; sent false documents (including a passport that purported to be William Wilkinson—a false identity—and a letter purportedly signed by Wilkinson) to a transfer agent; wrote false opinion letters to the transfer agent, brokerage firms, and OTC Markets Group; and secretly controlled an entity that sold 1,000,000 shares of Greenway stock during the promotion.  (*See* May 2, 2018 Trial Tr. vol. 1 131-133; May 3, 2018 Trial Tr. vol. 2, 37-50, 85-86; May 7, 2018 Trial Tr. vol. 3 77-101, 117-37, 147-55; May 8, 2018 Trial Tr. vol. 4 8-11, 18-29, 116-22, 158-59; May 18, 2018 Trial Tr. vol. 10 111-21; Exs. 2, 34, 35, 38, 40, 41, 202, 203).

During the Crown scheme, petitioner used the William Wilkinson identity to hide his control of Crown shares, filed false S-1 registration statements, altered signatures and other information on checks sent to Financial Industry Regulatory Authority, arranged false promotional materials, and secretly controlled multiple entities that sold millions of shares of Crown stock.  (*See* May 10, 2018 Trial Tr. vol. 6 113-127; May 14, 2018 Trial Tr. vol. 7 27-33, 57-58, 70-77; May 16, 2018 Trial Tr. vol. 9 66, 73-80; May 18, 2018 Tr. vol. 10 57-63, 100-15; Exs. 58, 59, 73, 86, 93-95, 129-132, 190-194, 197).

On May 21, 2018, petitioner was convicted of two counts each of 18 U.S.C. § 371 (conspiracy to commit securities fraud and wire fraud); 15 U.S.C. § 78(j)(b) (securities fraud); and 18 U.S.C. § 343 (wire fraud) with respect to stock promotions effected by Greenway Technology from November 2012 to January 2013, and Crown Marketing from January 2013 to

July 2013.  He was acquitted of destruction of records in an official proceeding, 18 U.S.C.

§ 1519 and § 2, and § 1512(c)(l) and § 2.  He was remanded upon conviction.

His sentencing took place on October 25, 2018.  At that hearing, the court calculated the

guideline range as follows:

> [B]ecause of the loss as found by the jury, the base offense level of 7 is increased
> by 16 levels, given what the jury found was the loss, by another 2 levels, because
> what the jury found was mass marketing, and another 2 levels, because the
> offense involved sophisticated means, for a total of 27. I add another 2 levels
> because a special skill was used as found by the jury. That gives us the
> 29. . . . [A]t criminal history category 1, that gives us a guideline range of not less
> than 87 nor more than 108 months, it gives us a period of supervised release of
> not less than 1 nor more than 3 years.

(Sentencing Tr. at 10-11).

The court imposed a sentence of 66 months—below the guideline range—followed by a

term of supervised release of three years.  (ECF Nos. 192, 212).

Petitioner timely filed notices of appeal of both the judgment and the court's separate

order of restitution.  (ECF No. 187, 203).

On August 6, 2021, the First Circuit affirmed both the judgment and petitioner's fine.

*United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6, 2021).

On October 26, 2021, petitioner filed a petition for a writ of certiorari in the United States

Supreme Court, which was denied on December 6, 2021.  (ECF No. 263).  *Hand v. United

States*, 142 S. Ct. 593 (2021).

On November 28, 2022, petitioner filed a motion to vacate, set aside, or correct his

sentence, pursuant to 28 U.S.C. § 2255, raising issues of judicial misconduct, ineffective

assistance of counsel, and prosecutorial misconduct.  (ECF. No. 270).[1]  He also filed a motion

---

[1] At the time of filing, and on the date of this decision, petitioner remains "in custody" for the purposes of
28 U.S.C. § 2255, as he is serving a term of supervised release. *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir.
1994) ("[T]he habeas corpus statute confers jurisdiction to district courts to entertain habeas petitions for relief

for discovery in connection with his motion to vacate.  (ECF No. 272).  On July 19, 2023, the

government opposed his motions.  (ECF No. 280).  Judge Young filed an order recusing himself

on October 19, 2023.

## II.     <u>Standard of Review</u>

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may

file a motion to vacate, set aside, or correct a sentence.  The relief requested may be granted on

the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution, (2)

was imposed by a court that lacked jurisdiction, (3) exceeded the statutory maximum, or (4) was

otherwise subject to collateral attack."  *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).

The petitioner bears the burden of establishing by a preponderance of the evidence that he is

entitled to relief under § 2255.  *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).

In deciding whether a petitioner has met that burden, the court generally must accept his factual

statements as true, "but . . . need not give weight to conclusory allegations, self-interested

characterizations, discredited inventions, or opprobrious epithets."  *United States v. McGill*, 11

F.3d 223, 225 (1st Cir. 1993).

The court has authority to determine whether to grant an evidentiary hearing, based on a

review of the record.  *See* Rule 8(a), Rules Governing Section 2255 Cases.  Although there is no

right to an evidentiary hearing, the statute provides that "[u]nless the motion and the files and

records of the case conclusively show that the prisoner is entitled to no relief the court

shall . . . grant a prompt hearing thereon."  28 U.S.C. § 2255(b); *see McGill*, 11 F.3d at 225.

However, "evidentiary hearings on motions are the exception, not the rule," and motions can

---

solely from persons who satisfy the status or condition of being 'in custody' at the time the petition is filed, and a petitioner under supervised release may be considered 'in custody.'"); *United States v. Rodriguez*, 523 F. Supp. 3d 142, 144 n.2 (D. Mass. 2021).

often be "heard" on the papers alone; therefore, the petitioner carries a "fairly heavy burden of demonstrating a need for special treatment." *Id.*  The court may forego a hearing when (1) the motion is inadequate on its face; (2) the movant's allegations, even if true, do not entitle him to relief; or (3) his allegations need not be accepted as true because they "state conclusions instead of facts, contradict the record, or are inherently incredible." *David*, 134 F.3d at 477-78; *compare id.* (affirming dismissal of a § 2255 motion without an evidentiary hearing where the petitioner alleged that he had learned of a favorable plea offer extended by the government that was not communicated to him until after its withdrawal, but offered "no specifics, e.g., who made the proposal, when it was tendered, what conditions were attached to it, why it was withdrawn, or how the petitioner came to hear of it"), *with Nembhard v. United States*, 56 F. App'x 73, 75-77 (3d Cir. 2002) (finding that a district court abused its discretion by failing to hold an evidentiary hearing where nothing in the record contradicted petitioner's allegation that "Counsel . . . failed to file a Notice of Appeal after being [ ] advised to do so by petitioner" even though he had not alleged when he made such a request).

## III.   Analysis

### A.   Procedural Default

As a threshold matter, collateral relief in a § 2255 proceeding is generally unavailable if a petitioner has procedurally defaulted his claim by failing to raise it at trial or on direct appeal. *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir.2002) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  A petitioner can avoid that bar if he can show "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains," or if he can show actual innocence.  *United States v. Frady*, 456 U.S. 152, 168, (1982); *see also Bousley*, 523 U.S. at 622.

While petitioner here did raise arguments concerning his sentence on direct appeal, those

arguments are distinct from the ones he raises here.  (*See* Defendant-Appellant Jehu Hand's

Supplemental Brief, *United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6, 2021) (No. 18-

2212, 19-1320)).

Petitioner's motion (and his reply memorandum in support of the motion) do allege some

causes for procedural default—specifically, that he discovered "very late in the process[] that

[appellate counsel] was going to fail to file an appeal on Defendant's conviction" and that he

"did his best" while his correctional facility was in the process of closing and his access to a

library and typewriters was limited.  (Reply at 2).  The reply memorandum also contends that the

failure to object to judicial misconduct was caused by ineffective assistance of appellate counsel

and, allegedly, a fear of bias.  (*Id.* at 3-4).  Furthermore, it contends that his "rushed and deficient

pro se brief" was attributable to his imminent transfer to a 23-hour lockdown facility due to the

COVID-19 pandemic.  (*Id.* at 7-8).[2]

Cause alone, without resulting prejudice, is insufficient.  *See Derman v. United States*,

298 F.3d 34, 45 (1st Cir. 2002); *Murray v. Carrier*, 477 U.S. 478, 496-97 (1986).  And the

motion does not allege either resulting prejudice or actual innocence.  Accordingly, the claims

are subject to denial solely on the basis of procedural default.

Nonetheless, in light of petitioner's *pro* se status and the fact that he raises claims of

ineffective assistance of counsel, the Court will address the merits of the claim.

### B.    Judicial Misconduct

The motion contends that petitioner's constitutional rights were violated because the trial

---

[2] Nevertheless, petitioner was able to file a 44-page supplemental brief, which the First Circuit specifically acknowledged reviewing.  *United States v. Hand*, 2021 WL 5095500, at *1 (1st Cir. Aug. 6, 2021), *cert. denied*, 142 S. Ct. 593 (2021) ("After a thorough review of the record and of the parties' submissions, including the appellant Jehu Hand's [ ] pro se submissions, we affirm.").  (*See* Defendant-Appellant Jehu Hand's Supplemental Brief, *United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6, 2021) (No. 18-2212, 19-1320)).

judge was cognitively impaired, and the trial court falsified the transcript.  "The Due Process

Clause requires that the trial judge is 'mentally competent to afford a hearing.'"  *Norris v. United*

*States*, 820 F.3d 1261, 1266 (11th Cir. 2016) (quoting *Jordan v. Massachusetts*, 225 U.S. 167,

176 (1912)).  However, allegations based on "unsupported generalizations" or "minor errors" are

not sufficient to suggest a judge is incompetent.  *See id.* at 1267; *Simington v. Premo*, 686 F.

App'x 493, 494 (9th Cir. 2017) (holding petitioner was not entitled to habeas relief because he

had not presented clear evidence that the trial judge was mentally incompetent); *Deere v. Cullen*,

718 F.3d 1124, 1147-1151 (9th Cir. 2013) (finding insufficient evidence to warrant an

evidentiary hearing on judge's mental competency).

### 1.     Cognitive Impairment

The motion asserts four indications of alleged cognitive impairment:  (1) the judge

allegedly mispronounced or misidentified the names of petitioner and an attorney on multiple

occasions; (2) in an unrelated case (*Securities and Exchange Commission v. Sargent*, 19-cv-

11416-WGY), the judge erroneously denied defense counsel's request to poll the jury following

the verdict; (3) the judge was "78 years old at the time of trial and sentencing" and about "9.9%

of adults in [the judge's] age bracket suffer from some degree of cognitive impairment"; and (4)

the judge denied petitioner's motion for a required finding of not guilty.  (Mem. at 16-20).

That purported evidence of cognitive impairment is far from sufficient to state a plausible

claim.  While the motion describes allegedly numerous occasions where the judge referred to

petitioner improperly (for example, allegedly calling him "Jusu" or mispronouncing his name as

"Yay-who") it also notes that the judge acknowledged that mistake.  (Mem. at 16-17).

Mispronouncing names—particularly names that are not in common use in the United States—

without more is not evidence of cognitive decline.  Nor is an error of law made in an unrelated

case.  (*See* Mem. at 19-20).  Judges are, of course, human, and a single mistake, particularly one

rectified upon its recognition, is hardly a sign of cognitive decline.  *See Deere v. Cullen*, 718

F.3d at 1149-1151.  The motion's conclusory statements concerning the ages of judges are

irrelevant, particularly in the absence of any evidence that the trial judge at issue is experiencing

any degree of cognitive impairment.  Finally, the motion invokes the petitioner's motion for a

direct verdict seemingly both as a result of and as evidence of impairment.  The cited transcript

belies the proposition for which it is cited.  (Mem. at 21 (citing May 18, 2018 Trial Tr. vol. 10

150)).  The judge understood the argument, raised relevant caselaw, and reached an entirely

supportable resolution.  (*See* May 18, 2018 Trial Tr. vol. 10 150-53).  *See Deere*, 718 F.3d at

1150-51.

"An evidentiary hearing is unnecessary where a petitioner lacks sufficient evidence to

establish his claims."  *O'Murchu v. United States*, 7 F.3d 218, at *2 (1st Cir. 1993) (quoting

*Porcaro v. United States*, 832 F.2d 208, 212 (1st Cir. 1987).  The issues raised in petitioner's

motion, even when taken as true, are insufficient even to warrant an evidentiary hearing, much

less the vacating of his sentence.

### 2.    Trial Transcript

Next, petitioner contends that the trial transcript omits the following:  (1) a victim's

statement that he was "testifying in hopes of recovering his losses," (2) the judge's statement that

"he did not know the difference between a computer and a hard drive," and (3) the judge's

various mispronunciations of petitioner's name.  (Mem. at 23).  He asserts that the omissions

were prejudicial because they limited his ability to make a proper appeal.

A defendant "does not have a constitutional right to a totally accurate transcript of his

criminal trial."  *Tedford v. Hepting*, 990 F.2d 745, 747 (3d Cir. 1993).  Petitioner's constitutional

rights would be "violated only if inaccuracies in the transcript adversely affected the outcome of

the criminal proceeding" or were "substantial enough to call into question the validity of the

appellate process." *Id.*; *see e.g.*, *Lees v. Alves*, 2023 WL 6296169, at *11 (D. Mass. Sept. 27, 2023); *Wilson v. Richards*, 2014 WL 6682579, at *2 (S.D.N.Y. Nov. 25, 2014); *United States v. Flute*, 2010 WL 545416, at *12 (D.S.D. Feb. 11, 2010).

Even assuming, without deciding, that all the asserted statements were omitted from the record, those omissions would not cause sufficient prejudice to give rise to a constitutional violation.  First, any statement made by a victim would have been heard by the jury, even if, for some reason, it was not recorded in the trial transcript.  *See Flute*, 2010 WL 545416, at *12 n.8 ("The jury which convicted Flute did so based on the evidence it saw and heard, not the written transcript of the trial—which, of course, was not prepared until well after the trial was over.").  To the extent the statement affected the credibility of the witness, that is a role for the jury, not the appellate court.  *See United States v. Rivera-Donate*, 682 F.3d 120, 134-35 (1st Cir. 2012) ("In conducting our sufficiency [of the evidence] analysis, we are not called to 'assess the credibility of a witness, as that is a role reserved for the jury.'" (quoting *United States v. Rivera-Rodriguez*, 617 F.3d 581, 595 n.6 (1st Cir. 2010))).  Second, it is unclear, to say the least, how the judge's alleged statement affected the ultimate outcome, particularly where petitioner was acquitted of the obstruction of justice counts and the appellate court otherwise affirmed the sufficiency of the evidence.  *Hand*, 2021 WL 5095500, at *2.  Finally, the judge's alleged mispronunciation of petitioner's name was not substantive in nature.  The motion does not allege that it caused confusion or created any other substantive form of prejudice.

C.       **Ineffective Assistance of Counsel**

Petitioner next contends that his trial counsel was ineffective because he (1) failed to object to the polling of the jury concerning defendant's sentencing, preventing petitioner from appealing his sentence on those grounds; (2) failed to object to inadmissible evidence concerning

the Wilkinson false passport; (3) failed to object to false statements in the government's closing arguments, the court's allowing juror questions, or the limited time allowed for closing arguments; (4) lost evidence and failed to conduct any pre-trial discovery, including discovery specifically requested by defendant; and (5) failed to adequately perform his duties in preparation for defendant's sentencing hearing.  The motion further contends that appellate counsel was ineffective because he failed to file an appellate brief with respect to petitioner's conviction and sentencing.

A petitioner claiming a violation of the Sixth Amendment right to effective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To succeed on such a claim, a petitioner must establish both (1) that his counsel provided deficient assistance and (2) that he suffered prejudice as a result.  *Id.*

The first prong requires a petitioner to demonstrate that his counsel's performance fell below an objective standard of reasonableness.  *Id.* at 689.  A court making that evaluation "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*  A petitioner may overcome that presumption by demonstrating that counsel's alleged errors were so serious that his performance "fell below an objective standard of reasonableness under the circumstances."  *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007). The second prong requires petitioner to show that counsel's deficient performance resulted in "prejudice"—that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

### 1.    Failures to Object

The motion contends that petitioner's trial counsel was ineffective because he failed to object to rulings on multiple occasions.

10

In assessing counsel's effectiveness regarding the strategic decisions not to object, the question is whether "under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. State of La.*, 350 U.S. 91, 101 (1955)).  "Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies.  This is especially true during trial, when time is short."  *Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000).

Petitioner first contends that defense counsel erred in failing to object to the jury polling because that forfeited the issue except for plain-error review.  (Mem. at 25).  Shortly after petitioner's sentencing, the First Circuit issued *United States v. Obiora*, 910 F.3d 555 (1st Cir. 2018), deciding that polling the jury on a sentence could not be labeled as a clear error, "at least where the poll is taken with counsel's before and after acquiescence."  *Id.* at 564.

At the sentencing hearing, the judge explained that he informally polls the jurors to ask their opinion of what the sentence ought to be.  (Sentencing Tr. at 7-8).  He explained, "in this case, after the verdict was returned and when I went back to excuse the jurors, I asked them for an informal poll of what they thought the sentence ought be and they gave it to me."  (*Id.* at 8).  He "simply asked them to write on a card what they thought would be an appropriate verdict having heard the evidence," and maintained the cards in case of appellate review.  (*Id.* at 12).  He collected and averaged the results, and announced during the sentencing hearing that the jurors believed the sentence ought to be 13.5 years.  (*Id.* at 8).

The government objected to the polling because the jurors were "not necessarily considering the factors that should be considered in crafting a sentence under 18 U.S.C. [§] 3553(a)."  (*Id.* at 12).  Defense counsel stated for the record that he did not object to the

11

court's polling, but did ask the manner in which the jurors were asked, and whether it was done in writing. (*Id.*).

The trial judge acknowledged that he did not "give them the guideline sentencing manual or make it complex in any way and of course there are various mitigating factors that [he] didn't ask them." (*Id.* at 13). And he indicated on the record that "what truly is most important in the sense of fashioning an actual [sentencing] calculus" was the sentencing memoranda and counsel argument. (*Id.*). He proceeded to calculate the sentence according to the guidelines, ultimately imposing a sentence of 66 months—substantially below the applicable guidelines-sentencing range. (*Id.* at 10-11).[3] Thus, the polling did not appear to impact petitioner's ultimate sentence.

Furthermore, there is evidence suggesting that defense attorneys may have reasons not to object to such polling. *See United States v. Obiora*, 910 F.3d at 563 ("a juror poll could well be expected to produce sentence recommendations less severe than would the Guidelines"); Judge James S. Gwin, *Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?*, 4 HARV. L. & POL'Y REV. 173, 187 (2010) (suggesting juries tend to recommend sentences significantly below the Guidelines range); *United States v. Collins*, 828 F.3d 386, 388 (6th Cir. 2016).

In any event, trial counsel's strategic decision was not entirely unreasonable. He decided to focus on his principal sentencing argument, that petitioner "should not suffer greater

---

[3] An excerpt of the sentencing follows:

[B]ecause of the loss as found by the jury, the base offense level of 7 is increased by 16 levels, given what the jury found was the loss, by another 2 levels, because what the jury found was mass marketing, and another 2 levels, because the offense involved sophisticated means, for a total of 27. I add another 2 levels because a special skill was used as found by the jury. That gives us the 29. . . . [A]t criminal history category 1, that gives us a guideline range of not less than 87 nor more than 108 months, it gives us a period of supervised release of not less than 1 nor more than 3 years.

(Sentencing Tr. at 10-11).

punishment for going to trial," rather than question the judge's "conception of the sanctity of the jury trial." (Iredale Aff. ¶ 4). Within the context of sentencing, that decision was not outside the "wide bounds of professional competence." *Phoenix*, 233 F.3d at 84.

Petitioner next contends that defense counsel should have objected to the admission of the Wilkinson false passport under Fed. R. Evid. 403 and 404(b). (Mem. 26-27). Petitioner was charged with conducting a pump-and-dump scheme, making evidence suggesting intentional concealment of identity highly relevant. Furthermore, because relevant evidence is inherently prejudicial, it is only unfair prejudice that permits exclusion under Rule 403. Given the highly relevant nature of the evidence, it would have to be extremely prejudicial for a 403 exclusion. In light of that balancing, trial counsel made no error by failing to object. *See Gomes v. Brady*, 564 F.3d 532, 540 (1st Cir. 2009) (finding trial counsel not ineffective for failing to object where he believed objection would have been overruled and that objecting would have emphasized the evidence). (Iredale Aff. ¶ 5 ("I made a strategic decision not to object to the admission of this evidence, because I believed that any reasonable judge would view this evidence as clearly admissible and relevant"; "the objection would, in my experience, do more harm than good.").

The motion also contends that trial counsel was ineffective for failing to object to a number of statements made in the government's closing argument and rebuttal. Trial counsel submitted an affidavit stating, "I made a strategic decision not to object during the government's closing argument, in the absence of gross misstatements or clear legal error, because I wanted to deliver my closing argument without objection from the government," and "I believe that any objection to the arguments Mr. Hand cites in his motion would have been overruled on the grounds that the government was simply urging the jury to draw inferences from the evidence." (Iredale Aff. ¶ 10).

There is substantial authority supporting such reasoning.  *See, e.g.*, *United States v. Jackson*, 918 F.2d 236, 243 (1st Cir. 1990) ("[A] defense counsel's failure to object to the prosecutor's remark and to request a curative instruction seems consistent with a reasonable tactical decision to minimize any harm the prosecutor's remark may have caused, by not inviting further attention to it."); *Meis v. Wyoming Dep't of Corrections*, 9 F.3d 695, 697 (8th Cir. 1993) ("Whether to object during closing argument to a slight mischaracterization of evidence is a strategic decision that deserves deference."); *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993) ("Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."). Therefore, the failure to object to the cited statements is not outside the bounds of permissible professional legal conduct.

Similarly, trial counsel's explanation for choosing not to object to the court's 30-minute time limit for closing arguments does not represent ineffective assistance:  "I believed that, given the complexity of the case and the government's burden of proof, the relatively short time for closing arguments would hurt the government more than the defense."  (Iredale Aff. ¶ 12).  As was his explanation for not objecting to juror questioning:  "I made a strategic decision not to object to this, because I believed such questions would provide insight into what the jurors were thinking, which could help my defense of Mr. Hand."  (Iredale Aff. ¶ 11).  Those decisions, judged "not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented," are reasonable ones.  *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991).

### 2.    Loss of Evidence

Petitioner next contends that he "provided trial counsel with a panoramic photograph of the oil refinery plant, upon which the Greenway oil refinery project was based, along with invoices from the engineering firm which was preparing the blueprints and equipment list for Greenway's proposed refinery" and that trial counsel lost them.  (Mem. at 28).[4]  In response, counsel states, "I do not recall specifically receiving and misplacing the documents in question, but I cannot say definitively that I did not."  (Iredale Aff. ¶ 7).

Even accepting these conclusory allegations as true, petitioner must still establish that he suffered prejudice as a result.  *Strickland*, 466 U.S. at 687.  The alleged evidence on that isolated point was directly contradicted by the testimony of Kevin Holbert, the sole officer or employee of Greenway, who testified that Greenway had no operations or assets during his tenure as president.  (May 8, 2018 Trial Tr. vol. 4 10-11).  That evidence makes it highly unlikely that the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694.

### 3.    Failure to Conduct Pre-Trial Discovery

Petitioner further asserts that trial counsel failed to adequately investigate or present certain evidence concerning Jeremiah Hand, Kimberly Peterson, and Mark Viau and Natural Blue.  (Mem. at 29-31).  Counsel asserts that he has "a general recollection of Mr. Hand wanting me to issue multiple subpoenas.  For the most part, these suggestions came up on the eve of, or during the trial."  (Iredale Aff. ¶ 8).  He further asserts he doubted such documents could be attained in time for trial, and that he had "no recollection of being asked to subpoena information

---

[4] That evidence is potentially important as it may be indicative of assets, which is a component of determining whether Rule 144(i) might apply to Greenway.  *See* 17 CFR § 230.144(i); J. William Hicks, RESALE OF RESTRICTED SECURITIES § 4:261 ("Rule 144 is not available for the resale of securities initially issued by either a reporting or non-reporting shell company (other than a business combination related shell company) or an issuer that has been at any time previously a reporting or non-reporting shell company," unless a former shell company meets all of a number of conditions).

to support a claim of selective prosecution based on a dispute between Mr. Hand and Mark
Viau," a claim he did not believe would have been successful.  (*Id.*).

Trial counsel "'has a duty to make reasonable investigations or to make a reasonable
decision that makes particular investigations unnecessary.'  But this duty does not invariably
require a lawyer, at all times and under all circumstances, to probe every evidentiary lead."
*Janosky v. St. Amand*, 594 F.3d 39, 49 (1st Cir. 2010) (quoting *Strickland*, 466 U.S. at 691).

Petitioner concedes that the proposed additional credibility evidence as to Jeremiah Hand
would have been cumulative, but contends "this additional information could have tipped the
scale in the mind of the jury."  (Mem. at 29-30).  Such close calls are not sufficient to "f[a]ll
below an objective standard of reasonableness under the circumstances."  *Sleeper*, 510 F.3d 32,
38 (1st Cir. 2007).

As to Peterson, the motion asserts that counsel "failed to issue a subpoena to a transfer
agent who had evidence that earlier, Peterson had forged Defendant's name on scores of
documents, pocketing over $100,000 in illicit proceeds," whereas for Mark Viau and the Natural
Blue retaliation issue, counsel did not subpoena information regarding the possibility of a
retaliatory prosecution.  (Mem. at 30-31).  Even giving plaintiff the benefit of the doubt that such
investigative avenues were not taken improperly, despite sufficiently prompt notice to counsel,
"[w]here, as here, the result of counsel's alleged failure to investigate is wholly speculative,
*Strickland*'s prejudice prong is not satisfied."  *Janosky*, 594 F.3d at 49.

### 4.   Failure to Prepare Adequately for Sentencing

Next, petitioner contends that trial counsel's failure to file his net worth statement early
enough to be considered by probation, address the fine in the sentencing memorandum, or even
object at sentencing rendered counsel's assistance ineffective.  (Mem. at 45-46).

The *Strickland* standard applies to the sentencing context, and it is not met here.  *See*

16

*United States v. Messner*, 37 F.4th 736, 740 (1st Cir. 2022). Given that the government did not seek a fine, it was reasonable for counsel not to address the fine in the memorandum. (*See* ECF No. 183 at 16 ("Due to the size of the restitution amount (i.e., at least $487,537.44) and Jehu Hand's purportedly limited ability to pay (PSR ¶¶ 88-89), the government believes that a fine would not serve the interests of justice in this case."). Moreover, the judge did have the net worth statement available for review prior to sentencing, and he specifically stated on the record that he had read the presentence report, sentencing memoranda, and "the data submitted," and was familiar with all those materials. (Sentencing Tr. at 5-6). Finally, because fines are based in part on a defendant's potential to become able to pay and the court subordinated the fine to the restitution judgment, there is no "reasonable probability that, but for incompetent counsel's errors," he would have received a lesser fine. *Messner*, 37 F.4th at 741. "[T]he prejudice prong is meant 'to ensure a defendant has not suffered a fundamentally unfair or unreliable outcome.'" *Id.* (quoting *United States v. Baptiste*, 8 F.4th 30, 35 (1st Cir. 2021)). The sentence and fine are neither unfair nor unreliable.

### 5.    Appellate Counsel

The motion asserts petitioner's appellate counsel rendered ineffective assistance by (1) failing to raise non-frivolous claims pressed by petitioner, (2) failing to file an *Anders* brief, (3) failing to communicate and coordinate with him, (4) failing to read the entire trial transcript, and (5) failing to file an appeal of the denial of a motion to suppress. The standard for ineffective assistance of counsel remains the same in the appellate context. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *see Strickland*, 466 U.S. 668 (1984).

First, as the motion acknowledges, failure of appointed appellate counsel to communicate and coordinate work with a defendant is unlikely to rise to the level of a constitutional violation. *See United States ex rel. Russo v. Attorney Gen. of Illinois*, 780 F.2d 712, 715 (7th Cir. 1986)

17

(citing *Smith v. Cox*, 435 F.2d 453, 458–59 (4th Cir.1970), *vacated on other grounds sub nom.*
*Slayton, Penitentiary Supt. v. Smith*, 404 U.S. 53, (1971)).  (Mem. at 48).  Moreover, it is evident
from the record that appellate counsel did have some amount of communication with petitioner.
(*See, e.g.*, Mem. at 49; App'x 109-24).

That communication, although clearly unsatisfying to petitioner, led to the filing of two
appellate briefs, one filed by appellate counsel concerning restitution, and another by petitioner
*pro se* regarding his sentence and the evidence of his convictions.  (*See* Brief of Appellant Hand,
*United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6, 2021) (No. 18-2212, 19-1320);
Defendant-Appellant Jehu Hand's Supplemental Brief, *United States v. Hand*, 2021 WL
5095500 (1st Cir. Aug. 6, 2021) (No. 18-2212, 19-1320)).

Appellate counsel's brief shows why he did not file an *Anders* brief—filing such a brief
is appropriate "if counsel finds his case to be wholly frivolous."  *Anders v. California*, 386 U.S.
738, 744 (1967).  That was not the case here, therefore counsel did not perform unreasonably by
failing to file an *Anders* brief.

The appellate brief, which contains many citations to the record, also shows support for
appellate counsel's assertion that he did "read the entire trial transcript."  (Kretzer Aff. ¶ 12; *see*
Brief of Appellant Hand at 4-21, *United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6,
2021) (No. 18-2212, 19-1320)).  Petitioner's contention to the contrary is nothing more than a
bare allegation.  There is no evidence suggesting that counsel's performance was below an
objective standard of reasonableness.

The motion's allegations seem intended to support its ultimate point that appellate
counsel should have raised the non-frivolous claims pressed by petitioner concerning his
conviction and sentencing.  However, defendants do not have a "right to compel appointed

counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751, (1983); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).  Even if petitioner could show that any issue not raised by counsel was clearly stronger than those appellate counsel presented, there is no prejudice because the appellate court also reviewed petitioner's supplemental brief.  Thus, any error in appellate counsel's decision to ignore the issues petitioner found most pressing was substantially mitigated by the First Circuit's review.  *See United States v. Schwartz*, 925 F. Supp. 2d 663, 690 (E.D. Pa. 2013) (finding no prejudice where the appellate court considered *pro se* submission); *Wee v. United States*, 2015 WL 4939612, at *4 (S.D.N.Y. 2015) (finding appellate counsel was not ineffective where supposedly ignored arguments were presented to the appellate court in a *pro se* letter); *United States v. Walker*, 2008 WL 3200688, at *16 (N.D. Okla., 2008) (holding appellate counsel was not ineffective for refusal to file a supplemental brief drafted by defendant that was rejected as meritless by the appellate court when offered *pro se*).

In addition, petitioner contends that appellate counsel's failure to file an appeal of the May 22, 2022 denial of his motion to suppress was ineffective.  (Mem. at 54).  There does not appear to be a denial on that date on either of the dockets.  However, to the extent petitioner addresses his April 25, 2018 motion, that would also constitute a claim that appellate counsel need not have presented within his professional judgment.[5]  Defendant has not shown "a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue],

---

[5] Judge Stearns denied a March 13, 2018 motion to suppress, which petitioner refers to as "the motion as originally filed," without prejudice because if the documents were procured pursuant to valid subpoenas there was nothing improper about the evidence, and if the suppression motion objected to procuring documents through Ms. Peterson, "defendant sacrificed any Fourth Amendment expectation of privacy he may have had."  (Mem. at 54). Electronic Order, No. 15-10386 (D. Mass. March 28, 2018), ECF No. 117.

he would have prevailed on his appeal." *Thompson v. Spencer*, 111 F. App'x 11, 13 (1st Cir. 2004) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

Thus, overall, the motion fails to demonstrate that the performance of petitioner's trial or appellate counsel fell below an objective standard of reasonableness.

### D.   **Prosecutorial Misconduct**

Finally, petitioner contends that the government violated his rights by providing allegedly altered documents and thus engaging in suppression of evidence, selectively prosecuting him, and making false statements in closing argument.[6]

"Prosecutorial misconduct is only a ground for § 2255 relief if it violates petitioner's due process rights . . . that is, if the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Due process may be violated if the government suppresses evidence favorable to the accused if that evidence is material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on such a claim, "petitioner must demonstrate: (1) the evidence at issue is favorable to him because it is exculpatory or impeaching; (2) the Government suppressed the evidence; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment)." *Bucci v. United States*, 662 F.3d 18, 38 (1st Cir. 2011) (quoting *Conley v. United States*, 415 F.3d 183, 188 (1st Cir. 2005)).

In particular, the motion contends that petitioner's testimony in another case had been

---

[6] The motion asserts a claim based on *Brady v. Maryland*, 373 U.S. 83 (1963), a ground that was also raised in petitioner's appeal. However, that claim was based on the non-disclosure of victims of the schemes, not the conduct asserted here. (*See* Defendant-Appellant Jehu Hand's Supplemental Brief, 43-44, *United States v. Hand*, 2021 WL 5095500 (1st Cir. Aug. 6, 2021) (No. 18-2212, 19-1320)). The First Circuit rejected that claim. *United States v. Hand*, 2021 WL 5095500, at *2 (1st Cir. Aug. 6, 2021), *cert. denied*, 142 S. Ct. 593 (2021).

altered to omit his provision of allegedly vital evidence to the SEC—an act he believes "would have shown that Defendant did not stand idly by when he knew about securities fraud." (Mem. at 60). Even assuming the government suppressed that favorable evidence—an assumption for which there is little support—there was no prejudice to the defendant sufficient to create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bucci*, 662 F.3d at 38 (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). Assisting with the prosecution of a separate securities fraud case is not sufficient to overcome the jury's finding that the petitioner perpetrated a fraud as to the Greenway and Crown matter.

Petitioner also has failed to assert a valid selective prosecution claim. To overcome the presumption that the government has exercised its broad discretion "in good faith for reasons of sound governmental policy," petitioner must establish

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*Tracey v. United States*, 739 F.2d 679, 682-83 (1st Cir. 1984).

Petitioner himself asserts that there were a "string of convictions, including Mitchell Brown, Antonio Katz, Frank Morelli, Jeremiah Hand and Adam Hand." (Mem. at 62). That assertion strongly weighs against the claim that others similarly situated have not been prosecuted. Moreover, under Rule 12, petitioner should have asserted that claim prior to trial; he does not appear to base his claim upon any information that was not reasonably available at that point. Fed. R. Crim. Pro. 12(b)(3)(iv); *see Tracey*, 739 F.2d 679, 682 ("[P]etitioner waived the right to raise the selective prosecution defense when he did not, as the rule mandates, raise it

prior to trial"); *Kellett v. United States*, 21 F.3d 419, at *2 (1st Cir. 1994) ("[T]his court has held that selective prosecution claims are deemed waived if not raised prior to trial.").  Thus, the court declines to find that there was selective prosecution or grant the discovery petitioner seeks.

Finally, petitioner's contention of false statements in closing argument is also unavailing. Prosecutors have the prerogative to "characterize the evidence presented at trial and argue certain inferences to the jury." *United States v. Martinez-Medina*, 279 F.3d 105, 119 (1st Cir. 2002). Even if a factual inaccuracy exists, if it is minor, related to peripheral issues, and non-prejudicial, that does not constitute misconduct. *Id.*  None of the statements petitioner points to here rise to the level of misconduct.

## IV.     <u>Conclusion</u>

For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV

F. Dennis Saylor IV

Dated:  November 30, 2023                Chief Judge, United States District Court